Susan Martin (Az#014226)
Daniel Bonnett (Az#014127)
Jennifer Kroll (Az#019859)
Martin & Bonnett, P.L.L.C.
4647 N. 32nd Street, Suite 185
Phoenix, AZ 85018
Telephone: (602) 240-6900
Facsimile: (602) 240-2345
smartin@martinbonnett.com
dbonnett@martinebonnett.com
jkroll@martinbonnett.com

Meenoo Chahbazi (Az# 029568)
Chahbazi Law Pllc
4742 N. 24th Street, Suite 300
Phoenix, AZ 85016
Telephone: (602) 282-5868
mc@employeelawoffice.com

*Attorneys for Plaintiff and the Putative Class*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Ioana Samartinean, individually and on behalf of all others similarly situated, | Case No: _____ |
| Plaintiff, | **PLAINTIFF'S CLASS ACTION AND COLLECTIVE ACTION COMPLAINT** |
| V. | |
| Dog Butlers LLC; Jayce McQuerter; Adam Gaston and Tahnya Kathryn Gubler, husband and wife, | |
| Defendants. | |

Plaintiff, on behalf of herself and all other similarly situated employees alleges:

    1.    Plaintiff brings this action to redress Defendants' violations of the Fair

Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq.* ("FLSA"), the Arizona wage and minimum wage statutes, A.R.S. § 23-350 *et seq.,* and § 23-363 *et seq.*, (collectively, "AWS") by knowingly failing to pay its dog walker, pet sitter and pet care worker employees for all compensable work time, and by denying them the statutorily required minimum wages and overtime wages for the work they performed.

2. Plaintiff, Ioana Samartinean, brings her FLSA claims on a collective basis pursuant to 29 U.S.C. § 216(b) for all individuals who are working or have worked as dog walkers, pet sitters and pet care workers for Defendants at any point during the maximum limitations period (the "FLSA Class").

3. Plaintiff Samartinean brings her Arizona state law AWS claims as a class action pursuant to Fed. R. Civ. P. 23 for all Arizona residents who are working or have worked as dog walkers, pet sitters, and pet care workers for Defendants at any point during the maximum limitations period ("The Arizona Class").

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over this action pursuant to 29 U.S.C. § 216(b), which provides that claims under the FLSA: "may be maintained against any employer… in any Federal or State court of competent jurisdiction" and pursuant to 28 U.S.C. § 1331.

5. This Court has supplemental jurisdiction over Plaintiff's AWS claims pursuant to 28 U.S.C. § 1367 because these claims arise from the same occurrence or transactions as Plaintiff's FLSA claim and are so related to these claims as to form part of the same case or controversy.

6. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2), because Plaintiff Samartinean resides in this District and suffered the losses at issue in this District. Upon information, Defendants Adam Gaston and Tahnya Kathryn Gubler reside in Maricopa County, Arizona. Upon further information, Defendants Dog Butlers LLC, Jayce McQuerter; Adam Gaston, and Tahnya Kathryn Gubler have significant business contacts

in this District. Defendants Dog Butlers LLC, Jayce McQuerter; Adam Gaston are alleged to have engaged in the wrongful conduct at issue in this District. The actions and omissions giving rise to Plaintiff's claims occurred in this District.

## PARTIES

7. Plaintiff Ioana Samartinean is a resident of Arizona who resides in Maricopa County. From October 2018 to November 2018, Plaintiff Samartinean worked as a dog walker, pet sitter and pet care worker for Defendants in this District. Beginning in October 2018, Defendants paid Plaintiff on a combined "per-visit"/hourly basis that did not include the payment of wages for all the hours she worked.

8. Defendants failed to pay Plaintiff Samartinean and their similarly situated current and former employees for their off-the-clock work time including, but not limited to, time spent: driving between job sites, searching for and locating lockboxes needed to gain authorized entry to work locations, accessing Dog Butler's smartphone application and entering required data in order to perform certain job functions and duties, providing status updates relating to customer services, and filling out other reports concerning or relating to duties performed.

9. In addition to not paying Plaintiff and similarly situated employees for all of this work, Defendants have also failed to pay Plaintiff Samartinean and other similarly situated employees for their actual hours of work time during overnight stays where they are required to remain on duty. As a result of Plaintiff Samartinean's experiences working as a dog walker, pet sitter and pet care worker for Defendants, she is personally familiar with, and was affected by, Defendants' policies and practices described in this Complaint.

10. Plaintiff Samartinean has consented in writing to be a part of this action pursuant to 29 U.S.C. § 216(b). *See* Consent Form (Exhibit A).

11. Defendant Dog Butlers LLC is a corporation with its headquarters located in Austin, Texas. Defendant Dog Butlers LLC's core business involves the provision of dog walking and pet care services in at least four states, including Arizona. As discussed

Page **3**

more fully below, Defendant Dog Butlers LLC is directly responsible for the operation of its dog walking and pet care business, and for the policies, practices, and conduct at issue in this case.

12. At all relevant times, Defendant, Adam Gaston ("Gaston"), was and is an Owner and Managing Member of Dog Butlers LLC. Upon information, Defendant Gaston has a home in Phoenix, Arizona, which Dog Butlers LLC lists as its Phoenix business location. At all relevant times, Mr. Gaston has exercised and continues to exercise direct and/or indirect supervisory authority over Plaintiff and similarly situated employees.

13. Upon information, Mr. Gaston has been directly or indirectly involved in the daily operations of Dog Butlers LLC that affect the terms and conditions of employment for Plaintiff Samartinean and similarly situated employees, including, but not limited to, decisions regarding: hiring and termination; scheduling or assigning hours worked and work locations; and determining job duties, wages paid, deductions made to wages, and discipline. Upon further information, during the relevant time period, Mr. Gaston was and is responsible for establishing the wages of Plaintiff Samartinean and other similarly situated employees. At all relevant times, Mr. Gaston was Plaintiff's "employer" within the meaning of the FLSA, 29 U.S.C. § 203(d).

14. Upon information, Tahnya Kathryn Gubler is the wife of Adam Gaston and is named as a Defendant solely for the purpose of Arizona's community property laws and obtaining jurisdiction over the Gaston/Gubler Marital Community. The acts and omission on the part of Defendant Gaston as set forth herein are alleged to have been undertaken in furtherance of the Gaston/Gubler Marital Community.

15. At all relevant times, Defendant, Jayce McQuerter ("McQuerter"), was and is an Owner and Director of Dog Butlers LLC. Defendant McQuerter signed the offer letter given to Plaintiff Samartinean at the commencement of her employment and directly supervised her during her tenure. At all relevant times, Mr. McQuerter has been directly or indirectly involved in the daily operations of Dog Butlers LLC that affect the terms and conditions of employment for Plaintiff Samartinean and similarly situated employees,

Page **4**

including, but not limited to, decisions regarding: hiring and termination; scheduling or assigning hours worked and work locations; and determining job duties, wages paid, deductions made to wages, and discipline. Upon further information, during the relevant time period, Mr. McQuerter was and is responsible for establishing the wages of Plaintiff Samartinean and other similarly situated employees. At all relevant times, Mr. McQuerter was Plaintiff Samartinean's "employer" within the meaning of the FLSA, 29 U.S.C. § 203(d).

## BACKGROUND FACTS

16. This action arises out of Defendants' systematic, company-wide wrongful failure to pay Plaintiff and other similarly situated dog walkers, pet sitters and pet care workers (collectively referred to hereafter as "Pet Care Providers") for all of their compensable work time and applicable minimum wages, in violation of the FLSA and the AWS. The primary duties of the Pet Care Providers involves providing contracted pet care services to Defendants' customers at and around the customers' homes and neighborhoods.

17. Defendants' uniform pay plan does not provide Plaintiff and other Pet Care Providers with payment for all their compensable hours worked. During the relevant statutory period, Defendants have maintained a corporate policy and practice of paying Pet Care Providers pursuant to a compensation method which denies them payment for all compensable hours worked including, but not limited to, work performed that was not accurately tracked or recorded by Defendants, (hereinafter, "off-the-clock" time).

18. Defendants pay Pet Care Providers at an agreed hourly rate of pay for time spent on certain tasks, but knowingly and intentionally deny Pet Care Providers pay and regularly require them to perform certain work off-the-clock.

19. By way of example, Pet Care Providers are required to use a smartphone application ("App") to perform certain job required tasks which is not counted as time worked and for which they are not compensated. Pet Care Providers are also instructed by Defendants to travel between job sites, take and upload photographs of the pets and provide

various status reports and updates without compensation or counting these tasks and travel time as worktime.

20. Defendants also failed to pay Pet Care Providers for their hours worked during required overnight stays where they are required to be on duty and available to attend to any and all needs of the pet(s) for whom they are assigned to provide care despite requiring Pet Care Providers working overnight to work twelve or more consecutive hours. Pet Care Providers have been and are unlawfully being deprived of their legally-required minimum wages for their hours worked during overnight stays.

21. Upon information and belief, Defendants have not and do not maintain accurate contemporaneous records of all the hours Plaintiff and its other Pet Care Providers worktime.

22. For at least three years prior to filing this action, Defendants have knowingly failed to pay Pet Care Providers for all of their compensable time worked, and have failed to pay the statutorily required minimum wages and overtime wages as required by the FLSA and the AWS.

23. As a result of the additional work assigned to the Pet Care Providers for which they do not receive any extra compensation, Pet Care Providers often perform work for the benefit of Defendants and receive less than the required statutory minimum and overtime wages for their work.

24. Plaintiff terminated employment on or about November 21, 2018.

25. The first regular payday after Plaintiff's termination was December 3, 2018. However, Plaintiff did not receive her pay for work performed through the last day of work until December 10, 2018 and was paid by wire transfer instead of direct deposit, causing Plaintiff to incur an additional fee.

## FLSA COLLECTIVE ACTION ALLEGATIONS

26. Plaintiff repeats and realleges the preceding paragraphs as though fully set forth herein.

27. Plaintiff brings her FLSA claims on a collective basis pursuant to 29 U.S.C. § 216(b) for all similarly situated individuals who are currently working for or have worked as Pet Care Providers for Defendants at any point during the maximum limitations period (the "FLSA Class").

28. Although Plaintiff and the FLSA Class members may have worked in different states or under different managers, this action may be properly maintained as a collective action because, among other things:

    a. They worked under the same material terms and conditions of employment;

    b. They performed the same job duties and had the same job-related responsibilities and assignments;

    c. They received common training about their employment and the wage and hour policies and practices at issue here, including training documented on video regarding use of Defendants' App;

    d. They were governed by the same timekeeping policies, practices and systems that were also incorporated into the App that they all used;

    e. They were governed by the same compensation policies, practices and systems;

    f. They were governed by the same policies, practices and systems concerning work hours and the performance of their work; and

    g. They were governed by the same policies, practices and systems concerning overtime hours and wages.

29. Plaintiff and the FLSA Class members do not meet any test for exemption under the FLSA and, accordingly, are non-exempt employees for purposes of the FLSA.

30. Plaintiff proposes an FLSA Class defined as follows:
All current or former dog walkers, pet sitters, and pet care workers or similarly situated individuals ("Pet Care Providers") employed by or working for or at the direction of Defendants at any time from or after October 9, 2016 and were not paid the required federal minimum wage for all hours worked or overtime at the required premium rate of pay for all hours worked in excess

of forty (40) in any regular workweek.

31. Plaintiff preliminarily estimates that the FLSA Class, including both current and former employees over the relevant period, will include more than 300 members. The precise number of FLSA Class members will be readily available from Defendants' personnel, scheduling, time and payroll records, and from input received from the Class members as part of the notice and "opt-in" process provided by 29 U.S.C. § 216(b).

## ARIZONA CLASS ACTION ALLEGATIONS

32. Plaintiff repeats and realleges the preceding paragraphs as though fully set forth herein.

33. Plaintiff also seeks to maintain this action as a class action, pursuant to Fed. R. Civ. P. 23(a) and 23(b), on behalf of herself and all other similarly situated Pet Care Providers who worked for Defendants in Arizona at any point during the maximum limitations period (the "Arizona AWS Class").

34. Plaintiff and other similarly situated Pet Care Providers all worked for or at the direction of Defendants under common employment policies and practices, were subject to the same compensation scheme, and were subject to the same employment practices as described above.

35. Plaintiff belongs to the Class she seeks to represent because she:
 a. Is a resident of and worked for Defendants in Arizona;
 b. Worked under the same material terms and conditions of employment as the Arizona Class members;
 c. Performed the same job duties and had the same job-related responsibilities as the Arizona Class members;
 d. Received the same training about her employment and the wage and hour policies and practices at issue here as the Arizona Class members;
 e. Was governed by the same timekeeping policies, practices and

   systems as the Arizona Class members;

   f. Was governed by the same compensation policies, practices and systems as the Arizona Class members;

   g. Was governed by the same policies, practices and systems concerning work hours and the performance of their work as the Arizona Class members; and

   h. Was governed by the same policies, practices and systems concerning overtime hours and wages as the Arizona Class members.]

### Class Definition

36. Plaintiff seeks certification of an Arizona AWS Class consisting of the following individuals:

> All current or former dog walkers, pet sitters, and pet care workers or similarly situated individuals ("Pet Care Providers") employed by or working for or at the direction of Defendants within the maximum applicable limitation period and were not timely paid all Arizona minimum wages, their promised hourly rate of pay, and overtime wages at the statutorily required rates of pay within the time required by state law.[1]

### Numerosity

37. The proposed Arizona AWS Class satisfies the numerosity requirement as the Arizona Class is so numerous that joinder of all members is impracticable.

38. Members of the proposed Arizona AWS Class can be identified and located using Defendants' payroll and personnel records. Members of the Arizona Class may be informed of the pendency of this action by direct mail, electronic mail, text message, and/or published and broadcast notice.

### Common Questions of Fact or Law

39. There are questions of fact and law common to the Arizona AWS Class

---

[1] Plaintiff reserves the right to propose a different class definition or include sub-classes, if appropriate, after the completion of discovery.

members which predominate over questions affecting only individual members, if any. Plaintiff, the members of the Arizona AWS Class, and Defendants have a commonality of interest in the subject matter and the remedy sought.

40. If individual actions were required to be brought by each member of the Arizona AWS Class injured or affected, the result would be a multiplicity of actions, creating a hardship to the Court, the Arizona AWS Class, and to the Defendants. Accordingly, a class action is an appropriate method for the fair and efficient adjudication of this lawsuit and distribution of the common fund to which the Arizona AWS Class is entitled.

**Typicality**

41. Plaintiff's claims are typical of the claims of the Arizona AWS Class's members. As a result of Defendants' unlawful conduct, Plaintiff suffered similar injuries as those suffered by other members of the Arizona AWS Class she seeks to represent.

**Adequacy**

42. Plaintiff is an adequate representative of the Arizona AWS Class she seeks to represent because she is a member of the Arizona AWS Class, and her interests do not conflict with the interests of the other members of the Arizona AWS Class. The interests of each Arizona AWS Class member will be fairly and adequately protected by Plaintiff and her undersigned counsel. Plaintiff has hired competent attorneys who are experienced in class action litigation of this type and who are committed to the prosecution of this Action.

**Superiority**

43. A class action is superior to other available means for the fair and efficient adjudication of this controversy because individual joinder of the parties is impracticable. Class action treatment will allow a large number of similarly situated persons to prosecute their common claims in a single forum, simultaneously, efficiently, and without the unnecessary duplication of effort and expense if these claims were brought individually.

44. Moreover, as the damages suffered by each Arizona AWS Class member may be relatively small, the expenses and burden of individual litigation would make it difficult for each Arizona AWS Class member to bring individual claims.

45. The presentation of separate actions by individual class members could create a risk of inconsistent and varying adjudications, establish incompatible standards of conduct for Defendants and/or substantially impair or impede the ability of each Arizona AWS Class's members to protect their interests.

## COUNT I
## FAILURE TO PAY OVERTIME AND MINIMUM WAGES IN VIOLATION OF FLSA
## (29 U.S.C. § 201 *et seq.*)

46. Plaintiffs reallege and incorporate by reference all allegations in all paragraphs as if fully set forth herein.

47. The FLSA, 29 U.S.C. § 206, provides in relevant part:

> Every employer shall pay to each of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, wages at the following rates:
> **(1)** except as otherwise provided in this section, not less than--
> **(A)** $5.85 an hour, beginning on the 60th day after May 25, 2007;
> **(B)** $6.55 an hour, beginning 12 months after that 60th day; and
> **(C)** $7.25 an hour, beginning 24 months after that 60th day;

48. The FLSA, 29 U.S.C. § 207(a)(2), provides in relevant part:

> no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

49. By the acts and omissions complained of above, including, *inter alia*, by failing to pay minimum wages and by failing to pay overtime wages for work in excess of 40 hours per week at the statutorily required rates, Defendants have violated the FLSA.

50. Plaintiff and FLSA Class Members are entitled to be paid no less than the applicable minimum wage for all hours worked and are entitled to receive compensation at the rate of one and one-half times their regular hourly rate(s) for each hour worked in excess of forty hours per workweek.

51. Defendants' violations of the FLSA were willful and accordingly, a three year statute of limitations applies, pursuant to 29 U.S.C. § 255.

52. Each improperly paid Plaintiff and FLSA Class Member, who has performed or continue to perform work for or at the direction of Defendants for any time during the three years preceding this lawsuit, are entitled to notification of the pendency of this action and of his/her right to consent to becoming a party to this action. Plaintiff requests conditional certification of the proposed FLSA Class and that Court approved notice be sent to all individuals meeting the definition of an FLSA Class Member, as defined above, pursuant to 29 U.S.C. § 216(b).

53. Defendants have intentionally, willfully and repeatedly engaged in a pattern, practice and/or policy of violating the FLSA.

54. Plaintiff and Class Members have been harmed and suffered damages by being denied applicable minimum wages and overtime wages in accordance with the FLSA.

55. As a result of Defendants' unlawful acts and violations of the FLSA, Plaintiff and FLSA Class Members have been damaged and pursuant to 29 U.S.C. § 216(b) are entitled to recovery of minimum wages, overtime wages, liquidated damages in an amount equal to the wages they are owed as unpaid overtime, prejudgment interest, attorneys' fees, costs and other compensation, declaratory and injunctive relief.

# COUNT II
## VIOLATION OF ARIZONA'S WAGE ACT
### (A.R.S. § 23-350 *et seq.*)

56. Plaintiff realleges and incorporates by reference all allegations in all paragraphs as if fully set forth herein.

57. Ariz. Rev. Stat. § 23-351 provides in relevant part:

> A. Each employer in this State shall designate two or more days in each month, not more than sixteen days apart, as fixed paydays for payment of wages to the employees . . .
> ***
> C. Each employer shall, on each of the regular paydays, pay to the employees . . . all wages due the employee up to such date, except
> ***
> (3) Overtime or exception pay shall be paid no later than sixteen days after the end of the most recent pay period.

58. Ariz. Rev. Stat. § 23-355(A) provides in relevant part:
> if an employer, in violation of this chapter, fails to pay wages due any employee, the employee may recover in a civil action against an employer or former employer an amount that is treble the amount of the unpaid wages.

59. Arizona Rev. Stat. § 23-352 provides in relevant part:

> No employer may withhold or divert any portion of an employee's wages unless one of the following applies:
> 1. The employer is required or empowered to do so by state or federal law.
> 2. The employer has prior written authorization from the employee. An employer shall not withhold wages under a written authorization from the employee past the date specified by the employee in a written revocation of the authorization, unless the withholding is to resolve a debt or obligation to the employer or a court orders otherwise.
> 3. There is a reasonable good faith dispute as to the amount of wages due, including the amount of any counterclaim or any claim of debt, reimbursement, recoupment or set-off asserted by the employer against the employee.

60. Arizona Rev. Stat. § 23-363 provides, in relevant part:

A. Employers shall pay employees no less than the minimum wage, which shall be not less than:

1. $10 on and after January 1, 2017.

2. $10.50 on and after January 1, 2018.

3. $11.00 on and after January 1, 2019.

4. $12.00 on and after January 1, 2020.

B. The minimum wage shall be increased on January 1, 2021 and on January 1 of successive years, by the increase in the cost of living. The increase in the cost of living shall be measured by the percentage increase as of August of the immediately preceding year over the level as of August of the previous year of the consumer price index (all urban consumers, U.S. city average for all items) or its successor index as published by the U.S. department of labor or its successor agency, with the amount of the minimum wage increase rounded to the nearest multiple of five cents.

61. Ariz. Rev. Stat. § 23-353(B) provides in relevant part:
When an employee quits the service of an employer he shall be paid in the usual manner all wages due him no later than the regular payday for the pay period during which the termination occurred. If requested by the employee, such wages shall be paid by mail.

62. By the acts and omissions set forth above, including by failing to timely pay all wages due to Plaintiff and Arizona AWS Class Members, including applicable minimum wages, promised hourly rates of pay, and overtime wages, Defendants have violated and continue to violate the AWS.

63. As a result of Defendants' violations of Ariz. Rev. Stat. §§ 23-351, 23-352, 23-353, and 23-363, Plaintiff was harmed and as a result of Defendants' violations of Ariz. Rev. Stat. §§ 23-351, 23-352, and 23-363, Plaintiff and Arizona AWS Class Members have been harmed, have suffered substantial losses and have been deprived of compensation to which they were entitled are entitled to an award of the unpaid wages, with prejudgment interest thereon, and treble the amount of such wages, together with attorneys' fees and

costs, pursuant to A.R.S. § 23-355.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of herself and all others similarly situated prays that judgment be entered against Defendants, and in favor of the Plaintiff and all others similarly situated, for a sum that will properly, adequately, and completely compensate Plaintiff and all others similarly situated for the nature, extent, and duration of their damages, the costs of this action, and for further relief including, but not limited to, the following:

a. approve this matter as a collective action and grant conditional certification of the FLSA Class as requested herein with respect to Count I;

b. approve and authorize distribution of an appropriate notice of conditional certification to be distributed to FLSA Class Members;

c. grant Rule 23 class certification to the proposed Arizona AWS Class as to the claims set forth in Count II;

d. appoint Martin & Bonnett, P.L.L.C. and Chahbazi Law PLLC to serve as Class and Collective Co-Counsel;

e. enter a declaration that Defendants have violated and are violating the FLSA as alleged;

f. enter a declaration that Defendants have violated and are violating Arizona's Wage Act as alleged;

g. award judgment in favor of Plaintiff and against Defendants for an amount equal to Plaintiff's and all Class members' unpaid wages pursuant to the applicable wage rates and promised hourly rates under Arizona's state law;

h. declare that Defendants' violations of the FLSA and Arizona wage and hour laws were willful;

i. award Plaintiff and members of the FLSA Class liquidated damages in accordance with the FLSA;

j. award Plaintiff and members of the Arizona Class treble damages in accordance with Arizona statutory provisions;

k. award prejudgment interest for the FLSA claims (to the extent that liquidated damages are not awarded);

l. award prejudgment interest for all state-law statutory wage claims (even if liquidated damages are awarded);

m. certify this action as a class action pursuant to Rule 23(a) and (b) of the Federal Rules of Civil Procedure and certify the Arizona AWS Class set forth above;

n. declare and find that Defendants willfully violated all applicable record keeping statutes;

o. issue all appropriate injunctive relief to prevent Defendants from violating the applicable and respective state-law statutory obligations, with ongoing oversight and continuing jurisdiction of the Court as needed, including requiring Defendants to pay for an audit of its record-keeping system;

p. award Plaintiff reasonable attorneys' fees and all costs of the collective action, to be paid by Defendants, in accordance with the FLSA;

q. award Plaintiff reasonable attorneys' fees and all costs of the Arizona AWS Class action, to be paid by Defendants;

r. award pre- and post-judgment interest and court costs as further allowed by law;

s.   award a reasonable service award for Plaintiff to compensate her for the time and effort spent protecting the interests of other Pet Care Providers, and the risks she has undertaken;

t.   grant Plaintiff and the Arizona AWS Class leave to add additional plaintiffs by motion, the filing of written consent forms, or any other method approved by the Court;

u.   provide additional general and equitable relief to which Plaintiff and the Arizona AWS Class may be entitled; and,

v.   provide further relief as the Court deems just and equitable.

Dated this 9th day of October, 2019.

MARTIN & BONNETT, P.L.L.C.

By: /s/  Daniel Bonnett
    Daniel Bonnett
    Susan Martin
    Jennifer Kroll
    4647 N. 32nd Street, Suite 185
    Phoenix, AZ 85018
    Tel: (602) 240-6900

CHAHBAZI LAW, P.L.L.C.

By: /s/  Meenoo Chahbazi
    Meenoo Chahbazi
    4742 N. 24th Street, Suite 300
    Phoenix, AZ 85016
    Telephone: (602) 282-5868

*Attorneys for Plaintiff and the Putative Class*

# EXHIBIT A

Susan Martin (Az#014226)
Daniel Bonnett (Az#014127)
Jennifer Kroll (Az#019859)
Martin & Bonnett, P.L.L.C.
4647 N. 32nd Street, Suite 185
Phoenix, AZ 85018
Telephone: (602) 240-6900
Facsimile: (602) 240-2345
smartin@martinbonnett.com
dbonnett@martinebonnett.com
jkroll@martinbonnett.com

Meenoo Chahbazi (Az# 029568)
Chahbazi Law PLLC
4742 N. 24th Street, Suite 300
Phoenix, AZ 85016
Telephone: (602) 282-5868
mc@employeelawoffice.com

*Attorneys for Plaintiff and the Putative Class*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Ioana Samartinean, individually and on behalf of all others similarly situated,<br><br>　　　　Plaintiff,<br><br>v.<br><br>Dog Butlers LLC; Jayce McQuerter; Adam Gaston and Tahnya Kathryn Gubler, husband and wife,<br><br>　　　　Defendants. | Case No: _____<br><br>**PLAINTIFF'S CONSENT TO SUE FORM** |

**CONSENT TO SUE**

1.　I hereby consent to be a Plaintiff and sue Defendants in this case. I understand

Page 1

that claims were brought in this case under the Fair Labor Standards Act (FLSA) and concern, among other things, the Defendants' alleged failure to pay employees for overtime wages.

2. I authorize Martin & Bonnett, P.L.L.C. and Chahbazi Law PLLC, their successors and assigns, to represent me in this case.

3. In the event this action gets conditionally certified and then decertified, I authorize Plaintiff's counsel to reuse this Consent Form to re-file my claims in a separate or related action against Defendants.

4. I authorize Martin & Bonnett, P.L.L.C. and Chahbazi Law PLLC, to file this consent with the Clerk of the Court.

Signature: _Ioana Samartinean_  Date: 10-8-19

Ioana Samartinean